UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FLORIAN ROSHI,                          )
                                        )
              Plaintiff,                )
        v.                              )          CIVIL ACTION
                                        )          NO. 14-10705-JGD
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
              Defendant.                )


**MEMORANDUM OF DECISION AND ORDER
ON CROSS-MOTIONS REGARDING DENIAL OF
SOCIAL SECURITY DISABILITY INSURANCE BENEFITS**

October 26, 2015

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Florian Roshi ("Roshi"), has brought this action pursuant to section 205(g)

of the Social Security Act, 42 U.S.C. § 405(g), in order to challenge the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his claim for

Social Security Disability Insurance ("SSDI") benefits.  The matter is presently before the court

on the plaintiff's "Motion to Reverse" (Docket No. 25), by which Roshi requests an order

vacating the Commissioner's decision and remanding the matter to the Social Security

Administration for further administrative proceedings.  It is also before the court on the

"Defendant's Motion for Order Affirming the Decision of the Commissioner" (Docket No. 32), by

which the Commissioner is seeking an order upholding her decision that the plaintiff is not

disabled and is therefore not entitled to SSDI.

The principal issue raised by the parties' motions is whether the Administrative Law

Judge ("ALJ"), in reaching his decision that Roshi was not disabled, properly weighed the

available opinion evidence regarding the limiting effects of the plaintiff's severe physical and

mental impairments.  The plaintiff contends that the ALJ erred by crediting the assessments of

two State agency reviewers, Phyllis Sandell, M.D. and Judith Kellmer, Ph.D., over the assess-

ments of his treating and examining sources.  He also contends that as a result of this error, the

ALJ relied on vocational expert testimony that was based on an inaccurate description of the

plaintiff's residual functional capacity, and failed to appreciate the need to consider a closed

period of disability.

The court's inquiry is a limited one that focuses primarily on whether the ALJ's decision

is supported by "substantial evidence."  Recognizing that the ALJ in the instant case gave

minimal probative weight to the opinions of Roshi's treating medical and mental health care

providers, this court has carefully scrutinized the ALJ's conclusions and the record in this case.

Applying the mandatory standard of review, and as detailed more fully below, this court finds

itself constrained to conclude that the ALJ conducted an appropriate analysis and that his

decision was supported by substantial evidence in the record.  Accordingly, the plaintiff's

motion to reverse is DENIED, and the Commissioner's motion to affirm is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

Roshi was born on May 22, 1983, and was 27 years old at the time he applied for SSDI.

(Tr. 151).  He left high school before completing the eleventh grade, and has never earned any

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 10.

type of degree. (Tr. 36). Although he is single, Roshi has two young children whom he cares for on the weekends. (See Tr. 52, 152). He was living with his mother at the time of the hearing before the ALJ. (Tr. 35-36).

During the time period between March 2001 and June 2009, Roshi held jobs as a satellite dish installer, office cubicle installer and short order cook. (Tr. 37-38, 54-55, 188). However, on June 30, 2009, while Roshi was working as a cook at a Red Robin Restaurant, he suffered third degree burns on both feet and ankles after slipping and falling feet first into a fry-o-later. (Tr. 458, 869). After receiving some treatment at a local hospital, Roshi was transferred to Massachusetts General Hospital, where he remained hospitalized for 10 days and underwent a series of skin grafts. (Id.). He claims that the intense pain and psychological injuries that he has experienced as a result of his accident have rendered him disabled and incapable of returning to work. (See Tr. 217-18).

### Procedural History

On July 7, 2010, Roshi filed an application for SSDI, claiming that he had been unable to work since June 30, 2009 due to his disabling condition. (Tr. 151). His application was denied initially in September 2010, and upon reconsideration in March 2011. (Tr. 71-72). The plaintiff then requested and was granted a hearing before an ALJ, which took place on December 21, 2012 in Boston, Massachusetts. (Tr. 29, 84-85, 117-23). Roshi, who was represented by an attorney, appeared and testified at the hearing. (Tr. 35-53). The ALJ also elicited testimony from a vocational expert ("VE"), who described the plaintiff's vocational background based on his past work experience and responded to hypothetical questions, which were aimed at determining whether jobs exists in the national and regional economies for an individual with

3

the same age, educational background, work experience and residual functional capacity

("RFC") as the plaintiff.  (Tr. 53-69).  On January 7, 2013, the ALJ issued a decision denying

Roshi's claim for benefits.  (Tr. 7-23).

On March 8, 2013, Roshi filed a request for review of the ALJ's decision by the Social

Security Appeals Council.  (Tr. 5-6).  However, on January 13, 2014, the Appeals Council denied

the plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner

for purposes of review.  (Tr. 1-3).  Accordingly, Roshi has exhausted all of his administrative

remedies, and the matter is ripe for review pursuant to 42 U.S.C. § 405(g).

### The ALJ's Decision

The ALJ concluded that from June 30, 2009 through the date of his decision on January

7, 2013, Roshi "ha[d] not been under a disability, as defined in the Social Security Act," which

defines "disability" as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months[.]"  (Dec. Finding #11; Tr. 22).  See also 42 U.S.C. § 423(d)(1)(A).  There is no dispute

that the ALJ, in reaching his decision that Roshi was not disabled, performed the five-step

sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following

analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law."  (See

Dec. 3-13; Tr. 12-22).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged

in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the

claimant is automatically considered not disabled and the application for benefits is denied.

See id. In this case, the ALJ found that Roshi had not engaged in such activity since June 30, 2009, the alleged onset date of his disability. (Dec. Finding #2; Tr. 12). Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is deemed not to be disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, the ALJ determined that Roshi suffered from a number of severe impairments, which included "reflex sympathetic dystrophy of the bilateral ankles and feet, status post third degree burns, status post grafting and excision," as well as post-traumatic stress disorder ("PTSD") and a major depressive disorder. (Dec. Finding #3; Tr. 12). While he acknowledged that Roshi also had a history of opiate addiction, the ALJ found that the plaintiff's substance abuse disorder had been in remission throughout the relevant time period, and was not severe within the meaning of the regulations. (Dec. 3; Tr. 12).

Because the ALJ determined that Roshi had impairments that were severe, he proceeded to step three in the sequential analysis. The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations. See Seavey, 276 F. 3d at 5; 20 C.F.R. § 404.1520(d). At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Dec. Finding #4; Tr. 13). Therefore, his analysis continued.

The fourth inquiry in the sequential evaluation process asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. Thus, in order to answer this question, the ALJ must first determine the claimant's RFC. In the instant case, the ALJ assessed Roshi's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] except that he could only stand or walk for about two hours in an eight-hour workday. In addition, the claimant could only occasionally push or pull with his bilateral lower extremities. The claimant would be able to understand and remember simple instructions, focus and concentrate at a consistent pace for a normal workday schedule, and manage routine social interactions in a low public interaction role with a supportive supervisor. The claimant could work in a low-stress, predictable setting.

(Dec. Finding #5; Tr. 14-15). Roshi challenges this finding, and contends that it was not based on substantial evidence.

In reaching his conclusion regarding Roshi's RFC, the ALJ considered the plaintiff's symptoms and the extent to which his symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. (Dec. 6; Tr. 15). He also considered a number of opinions that had been rendered by various treating and non-treating sources. (See Dec. 7-12; Tr. 16-21). As described in further detail below, the ALJ gave "minimal probative weight" to the opinions of Roshi's treating psychiatrist, the opinion of Roshi's primary care physician, and the assessment of a consulting psychologist who examined the plaintiff and

---

[2] 20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

rendered findings regarding his mental ability to perform work.  (See Dec. 10-11; Tr. 19-20).

However, the ALJ gave "great weight" to the opinion of a State agency physician, Phyllis Sandell,

M.D., who determined that Roshi retained the physical capacity to perform light work with the

exception of some restrictions on his ability to climb and to push and pull with his lower

extremities.  (See Dec. 11; Tr. 20).  He also gave "great weight" to the opinion of a State agency

psychologist, Judith Kellmer, Ph.D., and adopted her assessment of Roshi's mental RFC.  (See

Dec. 12; Tr. 21).  The plaintiff challenges the ALJ's findings on these matters, and ascribes error

to the manner in which the ALJ evaluated and weighed the available opinion evidence.  For the

reasons discussed below, this court finds that the ALJ's handling of that evidence was proper

and must be upheld on appeal.

After explaining the basis for his RFC determination, the ALJ concluded that Roshi was

unable to perform any of his past relevant work.  (Dec. Finding #6; Tr. 21).  Consequently, he

reached the fifth and final step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and

age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R.

§ 404.1520(a)(4)(v).  If so, the claimant is not disabled.  Id.  At step five, the Commissioner has

the burden "of coming forward with evidence of specific jobs in the national economy that the

applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony

to conclude that Roshi was capable of performing work that exists in significant numbers in the

national economy.   (Dec. 12-13 and Finding #10; Tr. 21-22).  Therefore, the ALJ found that the

plaintiff was not disabled under the Social Security Act.  (Dec. 13; Tr. 22).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.   ANALYSIS

### A.   Standard of Review

In this action, Roshi is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under [her] regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for

>the doctors or for the courts.  We must uphold the [Commissioner's]
>findings in this case if a reasonable mind, reviewing the record as a
>whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981).  The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'"  Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted).  "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard."  Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

**B.**     **Plaintiff's Challenge to the RFC Assessment**

Roshi's primary challenge to the ALJ's decision concerns that manner in which the ALJ evaluated and weighed the available opinion evidence in assessing the plaintiff's RFC.  (Pl. Mot. at 5-16).  Specifically, the plaintiff contends that the ALJ failed to provide adequate explanations

for rejecting the opinions of the treating and examining sources.  (Id. at 6-8, 14-16).  He further

argues that the ALJ was not entitled to rely on the assessments of the State agency reviewers,

Dr. Sandell and Dr. Kellmer, because they were based on a partial review of the medical record,

and were inconsistent "with the overwhelming preponderance of the medical opinion

evidence."  (Id. at 9).  For the reasons that follow, this court finds that there was substantial

support for the ALJ's treatment of the opinion evidence, and that his decision on these matters

must be upheld.

### The ALJ's Rejection of Dr. Curran's Opinions

Roshi first takes issue with the manner in which the ALJ weighed the opinions of the

plaintiff's treating psychiatrist, Claude Curran, M.D.  The record shows that Dr. Curran began

treating the plaintiff for ongoing management of his anxiety and depression in early October

2009.  (See Tr. 457, 642-47).  On May 27, 2010, Dr. Curran wrote a letter on Roshi's behalf in

which he stated that the plaintiff was continuing to receive mental health treatment every six

weeks as a result of his accident on June 30, 2009, and that he would "remain unable to work

until it is determined that he may return."  (Tr. 381).  On August 23, 2010, Dr. Curran wrote

another letter in which he described Roshi's status as follows:

> [Florian Roshi] has been under my care since October 6, 2009.  His
> diagnoses are Depressive Disorder, NOS (311), Anxiety Disorder (300.00)
> and Opioid Dependence (304.00).
>
> He continues to be in treatment due to his work related accident of June
> 30, 2009.  *The burn injury and resulting psychiatric injury suffered by Mr.*
> *Roshi is and continues to be a major, not necessarily a predominant,*
> *cause of his ongoing disability and need for treatment*.

(Tr. 457 (emphasis added)).  A little over two years later, on October 17, 2012, Dr. Curran wrote

a third letter in which he explained that Roshi was still in treatment, and reiterated his

10

assessment that the plaintiff's physical injury and resulting psychiatric impairment "continues to be a major, not necessarily a predominant, cause of his ongoing disability and need for treatment."  (Tr. 672).  He also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which he diagnosed Roshi with PTSD, pain disorder, and mood disorder stemming from reflex sympathetic dystrophy ("RSD"), and indicated that the plaintiff was "markedly limited" in fourteen out of twenty areas of mental functioning.  (Tr. 670-71).

The ALJ expressly considered Dr. Curran's opinions, including his opinion that Roshi was "disabled" and his opinion that Roshi was "markedly impaired" in almost every area of mental functioning.  (Dec. 10-11; Tr. 19-20).  However, he explained that he was giving "minimal weight" to Dr. Curran's opinions because he found them to be "inconsistent with the subjective and objective evidence of record."  (Dec. 11; Tr. 20).  This court finds that there is substantial support for the ALJ's decision on this issue.

"The law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians."  Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)).  Pursuant to the Social Security regulations, "'[c]ontrolling weight' is typically afforded a treating physician's opinion on the nature and severity of an impairment where it . . . 'is well-supported by medically accept-able clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the claimant's case."  Id. (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)).  However, the ALJ is entitled to "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and

evaluations by examining and nonexamining physicians." Id. "Inconsistencies between a

treating physician's opinion and other evidence in the record are for the ALJ to resolve." Lee v.

Astrue, C.A. No. 10-10708-DJC, 2011 WL 2748463, at *11 (D. Mass. July 14, 2011).

In the instant case, the ALJ found that Dr. Curran's opinions were inconsistent with

other substantial evidence contained in the plaintiff's record.  In particular, the ALJ found that

Dr. Curran's assessment was inconsistent with Roshi's history of conservative treatment, which

consisted of medication and therapy.  (Dec. 11; Tr. 20; see also Dec. 8-9; Tr. 17-18).  He also

found that it was undermined by Roshi's reports of his ability to perform activities of daily

living.  (Dec. 11; Tr. 20).  As the ALJ emphasized, Roshi testified that he was able to perform

light household tasks, shop for groceries, attend his medical appointments and care for his

young children on weekends.  (Dec. 4; Tr. 13).  The ALJ found it especially unlikely that "an

individual who is 'markedly impaired' in the ability to make simple work-related decisions" as

Dr. Curran opined, "would also be able to care for his children on a weekly basis."  (Dec. 11; Tr.

20).  Similarly, he found it inconsistent that an individual who had marked limitations in almost

every area of mental functioning would have had no psychiatric hospitalizations.  (Id.).

The ALJ also found that Dr. Curran's opinions that Roshi was disabled and had marked

limitations in nearly all areas of mental functioning were inconsistent with the record as a

whole.  (See id.).  As the ALJ noted in his written decision, Roshi's mental health impairments,

as well as his history of opiate addiction, predated his June 2009 accident.  (Dec. 8; Tr. 17).

Thus, Roshi's medical records show that he was receiving mental health treatment in 2008, and

was diagnosed with anxiety and depression at that time.  (Tr. 257-65).  They also show that

following his accident in 2009, Roshi obtained psychiatric treatment from Shamim Nejad, M.D.

(Dec. 8; Tr. 17).  Dr. Nejad determined that Roshi exhibited symptoms of a generalized anxiety disorder, which preceded his workplace injury.  (See, e.g., Tr. 357, 366, 405).  The ALJ was entitled to infer from this evidence that Roshi had the capacity to carry out work activities and remain employed despite his severe mental impairments.

There is also support in the record for the ALJ's conclusion that even after his accident, Roshi was "able to manage the symptoms of his mental impairment with a conservative regimen of treatment, focusing on medication management and therapy." (Dec. 9; Tr. 18).  For instance, according to Dr. Nejad's records, Roshi consistently denied any thoughts of self harm, suicidal or homicidal ideation, or psychosis.  (See Tr. 350, 353, 357, 359, 362, 366).  He also reported that his medications were helpful, and he specifically denied having "any significant difficulty with low mood, energy or concentration" in December 2009 and again in April 2010, during the same period when Roshi was receiving therapy from Dr. Curran.   (See Tr. 359, 362, 366, 645).  In addition, during a visit with his primary care doctor in July 2010, Roshi reported that his "depression [was] controlled" and that he otherwise "feels well."  (Tr. 446).  Such evidence is at odds with Dr. Curran's assessment of a disabling mental impairment during the same general time period.

As the ALJ noted in connection with his RFC assessment, Dr. Curran's notes from Roshi's therapy sessions "are not extensive or particularly in-depth in nature." (Dec. 8; Tr. 17).  More-over, they shed little light on the extent to which the plaintiff suffered functional limitations as a result of his mental impairments.  (See Tr. 639-47).  Under the social security regulations, "the less a medical source presents relevant evidence to support an opinion, the less weight it is entitled." Green v. Astrue, C.A. No. 11-11711-PBS, 2013 WL 636962, at *7 (D. Mass. Feb. 20,

2013).  Given Dr. Curran's sparse showing of support for his determination that Roshi had

marked limitations in most areas of mental functioning and was mentally disabled, it was well

within the ALJ's discretion to give his assessment little weight.

### Roshi's Challenge to the Treatment of Dr. Curran's Opinions

The plaintiff disputes the ALJ's conclusion that Dr. Curran's opinions were inconsistent

with the record.  In support of his argument, Roshi first points to opinions from two of his

treating physicians, Alfredo I. Gonzalez, M.D. and Bijan Niaki, M.D., both of whom expressed an

opinion that the plaintiff was disabled.  (Pl. Mot. at 7).  In August 2010, Dr. Niaki's office

prepared a "Disability Certificate" indicating that Roshi was "not able to work at all."  (Tr. 463

(emphasis in original)).  During that same month, Dr. Gonzalez wrote a brief note in which he

opined that Roshi was "unable to work @ present."  (Tr. 445).  He also provided the plaintiff

with a letter in which he stated that "the burn injury sustained on 6/30/09 and resulting

medical/psychiatric injury suffered by Mr. Roshi is and continues to be a major, not necessarily

a predominant, cause of his ongoing disability and need for treatment."  (Tr. 846).  As described

above, however, "the ultimate question of disability is for [the Commissioner], not for the

doctors or for the courts."  Lizotte, 654 F.2d at 128 (quoting Rodriguez, 647 F.2d at 222).

Consequently, a statement from a medical source that a claimant is "disabled" or "unable to

work" is not considered a medical opinion for purposes of the disability analysis, and the ALJ

had no obligation to credit such opinions in this case.  20 C.F.R. § 404.1527(d).  Moreover, the

record demonstrates that Dr. Gonzalez was Roshi's primary care physician and Dr. Niaki treated

Roshi for symptoms of RSD in his right ankle and foot, and there is no evidence to suggest that

either of those physicians was qualified to render an opinion regarding the extent of Roshi's

mental limitations.  (See Tr. 638, 849).  Accordingly, their opinions are insufficient to undermine

the weight given to Dr. Curran's opinions.  See Green, 2013 WL 636962, at *7 (finding that ALJ

did not err by giving little weight to opinion of plaintiff's treating physician on the grounds that

physician was not a psychiatrist and lacked expertise in the area of mental health).

Roshi's reliance on evidence from Ajit Mirani, M.D. as being supportive of Dr. Curran's

opinion is similarly unpersuasive.  On December 10, 2010, Dr. Mirani conducted an impartial

physical examination of the plaintiff.  (Tr. 869-71).  He diagnosed Roshi with a complex regional

pain syndrome affecting his lower right extremity, which he attributed to the accident that took

place in June 2009.  (Tr. 870).  Dr. Mirani further determined that Roshi was "partially disabled"

and that he could not perform work that required "any type of prolonged standing or walking."

(Tr. 870-71).  Although he opined that Roshi was "certainly capable of sitting and doing desk-

related work[,]" he explained that due to the extent of his lower extremity pain, Roshi "would

[not] be able to endure any ambulatory activities for more than a few minutes."  (Id.).  Signifi-

cantly, however, Dr. Mirani did not perform any type of mental examination, and did not

attempt to render an opinion regarding the plaintiff's mental limitations.  (See Tr. 869-71).

Thus, there is no merit to the plaintiff's assertion that this evidence provides support for Dr.

Curran's opinions.  (See Pl. Mot. at 7).

The plaintiff is correct that Dr. Curran's assessment was supported by the opinion of

John Fahey, Ph.D., a consulting psychologist who performed an examination of the plaintiff in

August 2010.  (See Tr. 458-60).  Although Dr. Fahey found that Roshi had the cognitive ability to

follow directions and carry out routine tasks, he also determined that the plaintiff's mental

impairments would likely "inhibit his effectiveness in most work contexts[,]"  and he assessed

the plaintiff as having a Global Assessment of Functioning ("GAF") score of 45.  (Tr. 458, 460).  A GAF score of 45 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 158 n.1 (D. Mass. 2010) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 34 (4th ed., text rev. 2000)).  The ALJ considered Dr. Fahey's opinion, but gave it "minimal probative weight."  (Dec. 11; Tr. 20).  Instead, he determined that "the record as a whole substantiates the presence of only a mild-to-moderate degree of mental impair-ment."  (Id.).  This court finds that his decision on this matter was supported by substantial evidence as well.

In rejecting Dr. Fahey's opinion regarding the extent of Roshi's mental limitations, the ALJ found it significant that Dr. Fahey had only one opportunity to perform an examination of the plaintiff.  (Id.).  He noted that this restricted Dr. Fahey's ability to judge the plaintiff's abilities and limitations.  (Id.).  In light of the record evidence described above which estab-lished, inter alia, Roshi's conservative treatment history and ability to perform various household tasks, attend medical appointments and care for his children on a weekly basis, the ALJ concluded that Dr. Fahey's opinion was inconsistent with the record.  Since the record contains substantial support for this conclusion, it must be upheld on appeal.

Citing Social Security Ruling ("SSR") 96-8p, the plaintiff argues that "if the ALJ was unclear concerning the bases for Dr. Curran's opinion, . . . he should have made reasonable efforts to contact him to seek clarification or otherwise develop and clarify the issue."  (Pl. Mot. at 14).  However, there is no indication that there was any ambiguity in Dr. Curran's opinions or

that the ALJ required clarification.  Nor does SSR 96-8p address the circumstances under which

an ALJ should seek further information from a medical source.  See SSR 96-8p, 1996 WL 374184

(S.S.A. July 2, 1996).  Courts that have considered similar arguments have ruled that the social

security regulations "cannot reasonably be read to require an administrative law judge to

contact a medical source whenever the administrative law judge would otherwise reject that

source's opinion[.]"  Paradise v. Astrue, No. 1:10-cv-236-JAW, 2011 WL 1298419, at *6 (D. Me.

Mar. 31, 2011), adopted by 2011 WL 1481315 (D. Me. Apr. 19, 2011).  Accord Slobuszewski v.

Soc. Sec. Admin. Comm'r, No. 1:10-cv-00302-JAW, 2011 WL 2678954, at *9 (D. Me. June 7,

2011), adopted by 2011 WL 3108085 (D. Me. July 26, 2011).  This court finds that the ALJ's

failure to contact Dr. Curran does not constitute error.

Next, Roshi argues that the ALJ failed to provide adequate reasons for the weight given

to Dr. Curran's opinions.  (Pl. Mot. at 14-15).  This court disagrees.  It is true that the ALJ "must

provide 'good reasons' for the weight ultimately assigned to [a] treating source opinion."

Taylor v. Astrue, 899 F. Supp. 2d 83, 87-88 (D. Mass. 2012) (quoting 20 C.F.R. § 416.927(c)(2)).

However, the ALJ fulfilled that obligation in the instant case.  As discussed previously, the ALJ

provided specific reasons for giving "minimal weight" to Dr. Curran's opinions, including the

plaintiff's history of conservative treatment and activities of daily living.  (Dec. 11; Tr. 20).  He

also described specific evidence in the case record, including evidence from Dr. Nejad's records,

and Roshi's own statements to his medical providers, which illustrated the inconsistencies

between Dr. Curran's opinions and other evidence of record.  Therefore, Roshi has not shown

that he is entitled to a remand on this basis.

Finally, this court is unpersuaded by Roshi's insistence that Dr. Curran's assessment must be given some weight, even if it fails to merit controlling weight, due to Dr. Curran's status as Roshi's treating psychiatrist.  (See Pl. Mot. at 15-16).  As another judge in this district has explained:

> Although opinions from treating and examining physicians may be considered helpful, and in many cases controlling, the hearing officer is only required to make a decision that is supported by substantial evidence.  Therefore, if the hearing officer comes to a conclusion contrary to that of the treating physician and alternatively adopts the opinion of a non-examining source, then this Court must uphold his decision as long as a "reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion."  This remains true even if this Court, sitting as a trier of fact, would conceivably rule otherwise.

Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (internal citations omitted).

Because the ALJ's treatment of Dr. Curran's opinions was supported by substantial evidence in the record, this court is not at liberty to disturb his decision on that issue.

### Roshi's Challenge to the ALJ's Treatment of Dr. Gonzalez's Opinion

The plaintiff also takes issue with the ALJ's decision not to credit the opinion of his primary care physician, Dr. Gonzalez, that the claimant was disabled and unable to work.  (See Pl. Mot. at 7; Pl. Reply Mem. (Docket No. 34) at 2).  The ALJ explained that he had given Dr. Gonzalez's opinion "minimal probative weight" because it was inconsistent with Roshi's conservative and effective treatment history, and with Roshi's testimony regarding his ability to carry out household tasks, physically care for his two children, and attend his medical appoint- ments on a consistent basis.  (Dec. 11; Tr. 20).  The ALJ also explained that he had given minimal weight to that opinion because it was "conclusory in nature, and [did] not set forth any specific

18

work-related limitations[,]" and because it addressed a matter – namely, the issue of disability – which was reserved for the Commissioner.  (Id.).

As described above, the ALJ is correct that the question of disability is reserved exclusively for the Commissioner.  Consequently, the opinion of a treating physician that a claimant is disabled from working "[is] not given special significance by mere virtue of the existence of a treating relationship."  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010).  In addition, the record supports the ALJ's findings that Roshi was able to perform household tasks, attend medical appointments and care for his children.  (See Tr. 52-53).  It also substantiates the ALJ's conclusion that Dr. Gonzalez's opinion was inconsistent with the plaintiff's treatment history.  For example, but without limitation, treatment records from the months following Roshi's accident show that his skin grafts were healing well, and that his pain had diminished significantly.  (See Dec. 7; Tr. 16, 320, 350, 352).  By April 2010, one of Roshi's treating physicians, Shawn Fagan, M.D., determined that Roshi appeared to ambulate well, and advised the plaintiff that he should be physically capable of returning to work.  (Tr. 364).  While there is evidence showing that Roshi subsequently complained of severe pain in his right foot, and that he was diagnosed with RSD of the right ankle and right foot by the summer of 2010, medical records from Dr. Niaki's office show that the plaintiff responded well to treatment with a series of lumbar sympathetic blocks.  (See Tr. 446, 464-66, 617-35).  Notably, in November 2010, Dr. Niaki commented that Roshi appeared "to be more active and walking more often[,]" and in December 2010, Dr. Niaki reported that Roshi was hopeful about return-ing to work.  (Tr. 620, 623).  In addition, during the hearing, Roshi stated that his methadone, which he was taking to address his opiate addiction problem, was the only treatment that he

was receiving for his pain and was helping to relieve symptoms of both his physical and mental impairments.  (Tr. 44).  Therefore, this court finds that the ALJ acted within his discretion when he decided to give Dr. Gonzalez's opinion no more than minimal weight.

### Alleged Failure to Consider Opinions of Drs. Niaki and Mirani

In addition to challenging the manner in which the ALJ weighed the opinions of Dr. Curran and Dr. Gonzalez, Roshi contends that the ALJ erred by ignoring his diagnosis of complex regional pain syndrome, which was made by Roshi's treating physician, Dr. Niaki, and by Dr. Mirani, the independent medical examiner.  (Pl. Mot. at 7).  However, the term "complex regional pain syndrome" is merely a way of describing RSD.  (See Tr. 638 (note from Dr. Niaki describing diagnosis of "complex regional pain syndrome type 1 (RSD)").  The ALJ specifically determined, at step 2 of his sequential analysis, that Roshi's severe medical impairments included RSD of the bilateral ankles and feet.  (Dec. Finding #3; Tr. 12).  Accordingly, there is no merit to the plaintiff's argument that this condition was ignored by the ALJ.

To the extent Roshi attributes error to the ALJ's failure to address Dr. Niaki's and Dr. Mirani's opinions in his written decision, this argument too is unpersuasive.  As indicated previously, Dr. Niaki's office prepared a Disability Certificate, dated August 24, 2010, which contained a handwritten note stating that Roshi was "not able to work at all."  (Tr. 463 (emphasis in original)).  While the ALJ considered the medical records from Dr. Niaki and described them in his written decision, he did not address Dr. Niaki's opinion or describe the amount of weight that he gave to it, if any.  (See Dec. 7-8, 10-12; Tr. 16-17, 19-21).  Assuming, arguendo, that his failure amounted to error, this court finds that any such error was harmless. As discussed supra, a treating physician's opinion that a claimant is unable to work does not

qualify as a "medical opinion" under the regulations.  See 20 C.F.R. § 404.1527(d).  As a result, the ALJ had no obligation to credit Dr. Niaki's conclusory assessment.  Furthermore, as the ALJ noted in his decision, Dr. Niaki's own treatment notes show that Roshi "responded favorably to his prescribed course of treatment."  (Dec. 7-8; Tr. 16-17).  Consequently, this court finds that a remand for consideration of Dr. Niaki's opinion would not alter the outcome of the ALJ's analysis regarding the plaintiff's RFC.  See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (ruling that "remand is not essential if it will amount to no more than an empty exercise").

There is no dispute that the ALJ, in his written decision, made no mention of Dr. Mirani's opinion that Roshi could not perform any job that would require prolonged standing or walking, and would not "be able to endure any ambulatory activities for more than a few minutes."  (See Def. Mem. (Docket No. 33) at 8).  However, Roshi has not shown that he is entitled to relief on this basis.  As an initial matter, Dr. Mirani was not a treating physician, and the ALJ was not required to provide "good reasons" for the weight that he assigned to Dr. Mirani's opinion.  See Taylor, 899 F. Supp. 2d at 87-88 (internal quotations omitted).  Moreover, the ALJ's failure to mention Dr. Mirani's evaluation does not necessarily compel the conclusion that he failed to consider it.  "The hearing officer is not required to – nor could he reasonably—discuss every piece of evidence in the record."  Sousa v. Astrue, 783 F. Supp. 2d 226, 234 (D. Mass. 2011).  Here, the ALJ stated that he had based his findings "on the record as a whole."  (Dec. 12; Tr. 21).  The plaintiff's assertion that he simply "ignored" Dr. Mirani's report is inconsistent with this representation.

Even if this court were to assume that the ALJ erred by failing to address Dr. Mirani's opinion, such error would not warrant a remand to the Social Security Administration.  In his assessment of the plaintiff's physical limitations, Dr. Mirani opined that Roshi had not reached a medical end point, and noted that the plaintiff "may improve in the future if he continues to derive benefit from the regional blocks."  (Tr. 870-71).  In fact, Dr. Niaki's records show that Roshi did improve with the continuation of regional blocks, and that he was able to walk more often and improve his range of activities.  (See, e.g., Tr. 610, 613).  The ALJ relied on that evidence in assessing Roshi's RFC.  (See Dec. 7-8; Tr. 16-17).  He also relied on Roshi's own testimony that he could walk for about 25 minutes.  (See Dec. 10; Tr. 19).  Such evidence directly contradicts Dr. Mirani's opinion that Roshi lacked the ability to engage in ambulatory activities for more than a few minutes.  Accordingly, this court concludes that a remand to review and address Dr. Mirani's opinion would serve no useful purpose.[3]

### Reliance on the Opinions of the State Agency Consultants

The plaintiff also attributes error to the ALJ's reliance on the opinions of the State agency consultants, Dr. Sandell and Dr. Kellmer.  Dr. Sandell reviewed the plaintiff's medical records and completed a physical RFC assessment on August 17, 2010.  (Tr. 449-56).  Therein, Dr. Sandell opined that Roshi had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 5 hours in an 8-hour workday, and sit for about 6

---

[3]  The Commissioner argues that any error resulting from the ALJ's failure to address Dr. Mirani's opinion was harmless for an additional reason as well.  Specifically, the Commissioner notes that Dr. Mirani found that Roshi had the capacity to perform sedentary work, and that the VE testified that an individual with Roshi's background and RFC could perform the sedentary job of a surveillance system monitor.  (Def. Mem. at 9).  Therefore, the Commissioner reasons that even if the ALJ had adopted Dr. Mirani's opinion, he would have found that Roshi had the ability to perform work that exists in significant numbers in the national economy, and was therefore not disabled.  (Id.).  In light of this court's conclusion that a remand is not warranted due to the ALJ's failure to discuss Dr. Mirani's assessment, it is not necessary to decide whether the Commissioner's alternative argument is sound.

hours in an 8-hour workday.  (Tr. 450).  She also determined that Roshi was limited in his ability

to push and/or pull with his lower extremities, and could only climb occasionally.  (Tr. 450-51).

Dr. Sandell further found that some of Roshi's complaints of pain were credible, and suggested

that he might perform best in a sedentary job.  (Tr. 450).

The ALJ stated that he agreed with Dr. Sandell's assessment and decided to give it "great

weight" because it was "generally consistent with the record as a whole."  (Dec. 11; Tr. 20).

Nevertheless, he explained that he was giving Roshi "the benefit of the doubt" by accounting

for a greater standing and walking limitation in his RFC assessment.  (Id.).  Accordingly, the ALJ

credited Dr. Sandell's opinion by concluding that Roshi retained the physical capacity to

perform light work, except that he "could only occasionally push or pull with his bilateral lower

extremities."  (Dec. Finding #5; Tr. 14-15).  He also credited Roshi's testimony that he could

walk no more than 25 minutes at a time by finding, as part of his RFC assessment, that the

plaintiff "could only stand or walk for about two hours in an eight-hour workday."  (Id.; see also

Dec. 6; Tr. 15).

The record establishes that Dr. Kellmer reviewed Roshi's mental health records and

completed a mental RFC assessment on September 8, 2010.  (Tr. 467-69).  Therein, she opined

that Roshi retained the mental capacity to understand and remember simple instructions, focus

and concentrate at a consistent pace for a normal workday schedule, and manage the routine

social interactions of the workplace.  (Tr. 469).  She also determined that the plaintiff would do

best in a "low public interaction role" with a "supportive supervisor," and that he could work in

a "low stress, predictable setting."  (Id.).  The ALJ explained that he agreed with Dr. Kellmer's

assessment, and had given it "great weight" because it was consistent with the record as a

whole, and he adopted Dr. Kellmer's opinion as part of his RFC assessment.  (Dec. 12; Tr. 21; see also Dec. Finding #5; Tr. 14-15).  Thus, the ALJ found that Roshi had the mental RFC "to understand and remember simple instructions, focus and concentrate at a consistent pace for a normal workday schedule, and manage routine social interactions in a low public interaction role with a supportive supervisor.  (Dec. Finding #5; Tr. 15).  He also found that "[t]he claimant could work in a low-stress, predictable setting."  (Id.).

### Roshi's Challenge to the State Agency Reviewers' Opinions

Roshi contends that it was improper for the ALJ to credit the opinions of the State agency reviewers.  (Pl. Mot. at 8-14).  To the extent Roshi suggests that those opinions cannot rise to the level of substantial evidence, this court disagrees.  Under the Social Security Act, "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims."  Babcock v. Barnhart, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) (quotations and citations omitted).  See also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical . . . consultants and other program physicians . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation").  Accordingly, "[i]t is well settled that an ALJ is entitled to rely upon the[ir] opinions" in evaluating a claim of disability.  Colvin v. Astrue, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011).  In fact, because State agency consultants are considered experts in the evaluation of disability claims, the Social Security regulations "require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians[.]"  SSR 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996) (emphasis added).  See also 20 C.F.R. § 404.1527(e)(2)(i) (explaining that ALJs "must consider findings and other opinions of State agency medical and

psychological consultants and other program physicians . . . as opinion evidence").  This

includes assessments regarding the claimant's RFC. SSR 96-6P, 1996 WL 374180, at *4.

To the extent the plaintiff suggests that the opinion of a State agency consultant cannot

outweigh the opinion of a treating or examining physician, this argument too is unconvincing.

"The hearing officer's choice to accept a non-treating, non-examining physician's assessment is

completely permissible within the regulations 'provided there is support for the result in the

record.'"  Monroe, 471 F. Supp. 2d at 212-13 (quoting Shaw v. Sec'y of Health & Human Servs.,

No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994)).  Furthermore, the ALJ is entitled to

adopt the State agency physician's opinion, even if it conflicts with the opinions of the

claimant's treating physicians.  See id. (finding that ALJ's decision to adopt consulting

physicians' opinions over the conclusions of claimant's treating physician was supported by

substantial evidence).

Here, the ALJ's decision to adopt the State agency consultants' opinions over those of

Roshi's treating and examining sources was supported by substantial evidence.  To the extent

the treating sources opined that Roshi was disabled or had no ability to work, those opinions

were not entitled to deference for the reasons discussed above.  In addition, the record

provides adequate support for the State agency consultants' opinions.  For example, Dr.

Sandell's assessment that Roshi retained the physical capacity to perform a limited range of

light work was supported by such evidence as Dr. Fagan's April 2010 finding that Roshi could

ambulate well and should be capable of returning to work, Dr. Niaki's reports that Roshi

responded well to treatment and was walking more often, and Roshi's own testimony that he

could walk for up to 20 or 25 minutes and that methadone was the only treatment that he was

taking for his pain.  Similarly, Dr. Kellmer's opinion regarding Roshi's mental capacity is

supported by such evidence as Roshi's conservative treatment regimen, activities of daily living,

and reports to his health care providers that his medications were helpful and his depression

was under control.  Thus, the ALJ was entitled to credit their opinions over those of Roshi's

treatment providers.

The plaintiff nevertheless asserts that the RFCs of the State agency consultants cannot

constitute substantial evidence because they were based on an incomplete record.  (Pl. Mot at

9-14).  The First Circuit has held that the opinion of a non-examining consultant cannot serve as

substantial evidence if it is "based on a significantly incomplete record, *and* it [is] not well

justified" because it fails to account for a deterioration in the claimant's condition.  <u>Alcantara v.

Astrue</u>, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) (emphasis added).  "On the other

hand, the ALJ may rely on [such] evidence when the information in that evidence remains

accurate."  <u>Abubakar v. Astrue</u>, C.A. No. 1:11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass.

Mar. 21, 2012).  In this case, Dr. Sandell completed her assessment of Roshi's physical RFC on

August 17, 2010. (Tr. 456).  Therefore, she was able to review the medical records relating to

Roshi's accident and subsequent treatment through April 27, 2010, as well as Dr. Gonzalez's

treatment notes from a visit on July 19, 2010 and his August 2, 2010 opinion that Roshi was

incapable of working at that time.[4]  (Tr. 270-348, 352, 355-56, 361-65, 384-440, 446-47, 506-

---

[4] In her assessment, Dr. Sandell noted that in April 2010, Roshi complained of a burning sensation in his ankles, especially after walking.  (Tr. 450). She also responded "No" to a question as to whether there were "medical source conclusions about the claimant's limitations or restrictions" that were significantly different from her findings.  (Tr. 455).  The plaintiff interprets this evidence to mean that "the last record [Dr. Sandell] saw was from April of 2010" and that Dr. Sandell either did not see or intentionally discounted opinions from Roshi's treating providers stating that the plaintiff was unable to work.  (Pl. Mot. at 10).  Assuming, <u>arguendo</u>, that the plaintiff's interpretation is correct, and that Dr. Sandell did not see all of the records that were available to her, this court finds that it would not have altered her assessment of Roshi's physical RFC.  As an initial matter, Dr. Sandell found

603, 674-845).  Those records constitute a significant portion of the evidence pertaining to

Roshi's physical impairments, as well as a significant portion of the administrative record.  This

is not a case in which the consulting physician's assessment cannot provide substantial

evidence because it was based on a "significantly incomplete record[.]"  Alcantara, 257 Fed.

Appx. At 334.

There is no dispute that Dr. Sandell would not have seen the records from Dr. Niaki or

the assessment of Dr. Mirani regarding the plaintiff's RSD.  Nor, as the plaintiff argues, could

she have seen records from visits that Roshi had with John B. Howard, M.D., who treated Roshi

for symptoms relating to his RSD during the time period from March 25, 2011 through

September 2, 2011.  (See Tr. 648-59).  However, this is not sufficient to warrant a judgment in

the plaintiff's favor.  The ALJ reviewed those records, and addressed them in connection with

his assessment of Roshi's RFC.  (See Dec. 7-8; Tr. 16-17).  As described above, Dr. Niaki's records

indicated that Roshi responded well to treatment.  Similarly, on June 22, 2011, Dr. Howard

noted that Roshi appeared to be "doing well" on his medications, and on September 2, 2011,

he noted that Roshi "[did] not appear to be in any distress." (Tr. 648, 654).  Furthermore, as the

ALJ emphasized in his decision, Roshi began participating in an opiate addiction program in

November 2011, and during the hearing Roshi testified that the medication he was receiving in

connection with that program was the only remaining treatment that he was receiving for pain.

(Dec. 8; Tr. 17).  Therefore, the ALJ was justified in relying on Dr. Sandell's opinion despite the

---

that "[s]ome pain is credible and [claimant] may do best in sedentary job."  (Tr. 450).  Therefore, she credited, at
least to some extent, Roshi's complaints of pain in his lower extremities.  Additionally, as described in further
detail above, the subsequent records relating to Roshi's physical impairments indicate that he responded well to
treatment for his symptoms of RSD and was able to rely on only his methadone to obtain relief for his pain.  (See
Tr. 44, 610, 613-17).  Thus, they are consistent with Dr. Sandell's assessment.

subsequent evidence regarding the plaintiff's RSD, especially given that he "accounted for a somewhat greater standing and walking limitation" by limiting Roshi to 2 hours of standing or walking in an 8-hour workday. (Tr. 20).

The plaintiff's assertion that Dr. Kellmer based her mental RFC assessment on a significantly incomplete record is also unpersuasive. Dr. Kellmer completed her assessment, as well as a Psychiatric Review Technique form ("PTRF") on September 8, 2010. (Tr. 469, 471). Thus, she had an opportunity to review mental health records that predated Roshi's accident, Dr. Nejad's records for the period from August 2009 through June 2010, records of treatment with Dr. Curran through August 2010, and records of treatment at South Bay Mental Health during the summer of 2010. (See Tr. 257-66, 350-68, 378-80, 405-21, 442-43, 643-47, 835-43, 851-68). In addition, Dr. Kellmer had an opportunity to review Dr. Fahey's August 27, 2010 psychological evaluation and Dr. Curran's opinions that Roshi was disabled and unable to work. (See Tr. 381, 458-60, 847-48). Therefore, she was able to consider the vast majority of records relating to Roshi's mental health treatment, as well as the bulk of the records relating to Roshi's treatment for his physical impairments.[5]

The plaintiff is correct that Dr. Kellmer would not have seen Dr. Curran's October 17, 2012 Medical Source Statement in which he assessed Roshi as having marked limitations in most areas of mental functioning. (See Pl. Mot. at 12-13). However, this is insufficient to discredit Dr. Kellmer's opinion. The ALJ reviewed Dr. Curran's assessment and explained why

---

[5] The fact that Dr. Kellmer described only certain records in her consultant's notes attached to the PRTF does not establish that she failed to review all of the records that were available to her through the date of her opinion. The plaintiff has not cited any authority, and this court is aware of none, which requires a State agency consultant to list every record she considered. Moreover, Dr. Kellmer indicated that her assessment covered the time period through September 8, 2010. (Tr. 471).

he decided to give it minimal probative weight.  For the reasons described above, his decision on that matter was supported by substantial evidence.

Roshi suggests that Dr. Kellmer's opinion was unreliable because she misread the date of Dr. Fahey's psychological evaluation.  Specifically, in her notes supporting her mental RFC assessment, Dr. Kellmer stated that "[c]laimant's statements are partially credible; he denies depression and ptsd to MGH psych consult in 8/2009, then reports symptoms to CE Fahey, Ph.D. two weeks later."  (Tr. 469).  In fact, Dr. Fahey's evaluation took place on August 27, 2010, and Dr. Kellmer acknowledged as much in her notes accompanying her PRTF.  (Tr. 458, 483). Therefore, Dr. Kellmer's statement that Roshi reported symptoms to Dr. Fahey in 2009 was mistaken.

Dr. Kellmer's inaccuracy does not establish that the ALJ erred by relying on her assessment of Roshi's mental RFC.  First of all, Dr. Kellmer's assessment was not based on one or two pieces of evidence, but rather on a broader review of Roshi's medical records.  (See Tr. 469).  In connection with her assessment, Dr. Kellmer indicated that she had reviewed evidence of Roshi's accident and medical reports relating to his burns.  (Id.).  She also indicated that she had considered his allegations of pain, PTSD and depression, as well as evidence of stressors in his personal life.  (Id.).  Dr. Kellmer found it significant that Roshi's pain management was improving, that he was cognitively intact, that he remained capable of relating adequately to others, and that his substance abuse was in remission.  (Id.).  Thus, the record establishes that there were a number of factors that influenced her decision.

Notably, the record also illustrates that on July 19, 2010, less than two months prior to his visit with Dr. Fahey, Roshi informed Dr. Gonzalez that his depression was "controlled" and

that he otherwise felt well.  (Tr. 446).  Accordingly, even though Dr. Kellmer was mistaken about the date of Dr. Fahey's evaluation, the record supports her finding of inconsistencies in Roshi's reports of his mental health status, as well as her conclusion that his statements were only "partially credible."

Finally, Roshi argues that Dr. Kellmer's assessment was undermined by the opinion of Sue Conley, Ph.D., a State agency psychologist who considered the plaintiff's application upon reconsideration and completed a PRTF on March 9, 2011.  (Tr. 485).  The plaintiff argues that Dr. Conley found "insufficient evidence for her to render an opinion" regarding the plaintiff's mental RFC, and he reasons that there was insufficient evidence for Dr. Kellmer's assessment of moderate limitations in mental functioning as well.  (Pl. Mot. at 14).  However, Roshi is mischaracterizing Dr. Conley's opinion.  Dr. Conley did not find insufficient evidence to render an opinion regarding Roshi's mental capacity.  Instead, she explained that Roshi had alleged *worsening* of his physical and mental impairments at the reconsideration level, but did not respond to efforts to contact him to obtain supporting evidence.  (Tr. 497).  She further stated that she was "[u]nable to assess allegations of worsening due to lack of new [medical evidence of record]."  (Id.).  Nothing in her finding calls Dr. Kellmer's assessment into question, and the ALJ did not err by relying on that assessment to support his finding regarding Roshi's RFC.[6]

C.    **Roshi's Challenge to the VE Testimony**

The plaintiff's next challenge to the ALJ's decision concerns the ALJ's reliance on the VE's testimony that an individual with Roshi's age, education, work experience and RFC could

---

[6] To the extent Roshi attributes error to the ALJ's failure to address Dr. Conley's finding in his written decision, that argument also lacks merit.  Because Dr. Conley was unable to evaluate Roshi's claim of worsening symptoms, or to perform an assessment of his mental RFC, there was no opinion for the ALJ to consider.  (See Tr. 485-98).

perform work that exists in significant numbers in the national economy.  The plaintiff contends

that the VE's testimony was unreliable because it was based on a hypothetical question which

did not accurately convey the claimant's RFC.  (Pl. Mot. at 16-18).  Again, this court disagrees.

At step five in the analytical process, the Commissioner must provide evidence that the

claimant can still perform work that exists in significant numbers in the national economy.  <u>See</u>

<u>Seavey</u>, 276 F.3d at 5.  "The opinion of a vocational expert that a Social Security claimant can

perform certain jobs qualifies as substantial evidence at the fifth step of the analysis."  <u>Sousa</u>,

783 F. Supp. 2d at 235.  "In order to be substantial evidence, however, the opinion of the

vocational expert must be in response to a hypothetical that accurately describes the claimant's

limitations."  <u>Id.</u>  Here, there is no dispute that the hypothetical question at issue incorporated

the RFC that the ALJ ultimately adopted in his written opinion.  For the reasons discussed

above, that assessment of Roshi's abilities was based on substantial evidence.  Because Roshi

has not raised any new arguments in support of his assertion that the RFC presented to the VE

did not accurately reflect his limitations, he has not established any error on the part of the ALJ.

**D.**     **<u>Failure to Consider a Closed Period of Disability</u>**

The plaintiff next contends that the ALJ erred by failing to find that Roshi qualified for a

closed period of disability covering at least the time period between his initial injury on June 30,

2009 and June 30, 2010.  (Pl. Mot. at 18-19; Pl. Reply Mem. at 8-9).  "Under the Regulations, a

claimant must show that he has a severe impairment that persists for a continuous period of at

least 12 months."  <u>Green</u>, 2013 WL 636962, at *9.  By arguing that the ALJ should have con-

sidered a closed period of disability, Roshi effectively asserts that "an ALJ is required to consider

the possibility that an applicant met this one-year requirement within a longer period of alleged

disability, even when [as here,] a claimant does not ask the ALJ to do so." Id. No Court of

Appeals other than the Eighth Circuit has suggested that ALJs have any such obligation. Id. In

the absence of such authority, this court declines to adopt the proposed requirement. See id.

(declining to adopt Eighth Circuit's reasoning with respect to closed period of disability). In any

case, the record contains sufficient evidence to defeat a claim of disability in the year following

Roshi's injury. Therefore, judgment must enter in favor of the defendant on Roshi's appeal of

the Commissioner's decision.

###     E.       Arguments Raised in Roshi's Reply Memorandum

In his Reply memorandum, Roshi raises a number of arguments that were not

developed or not even alluded to in his moving papers. In particular, Roshi argues that the ALJ

erred by ignoring the opinion of Ms. Adelman, a Registered Nurse; by failing to properly address

what he meant by the need for a "low stress" job and a "supportive" supervisor during his

questioning of the VE; by failing to adequately address the VE's testimony that she was

deviating from the Dictionary of Occupational Titles with respect to the job of a surveillance

system monitor; and by relying on the VE's testimony even though she failed to use a valid

method for calculating the number of positions available for a surveillance system monitor.

(See Pl. Reply Mem. at 2, 7-8). The purpose of a reply brief is "to counter the [opponent's]

arguments, not to offer new theories of error for the first time." Wills v. Brown Univ., 184 F.3d

20, 27 (1st Cir. 1999). "Where, as here, a moving party raises an argument for the first time in a

reply brief, that argument is waived." Napert v. Gov't Emps. Ins. Co., C.A. No. 13-10530-FDS,

2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) (slip op.). Therefore, this court declines to

address these arguments on the merits.

## IV.   <u>CONCLUSION</u>

For all the reasons detailed herein, the plaintiff's "Motion to Reverse" (Docket No. 25) is

DENIED and the "Defendant's Motion for Order Affirming the Decision of the Commissioner"

(Docket No. 32) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge